**LAW OFFICE OF J. BLACKNELL**
**JOVAN BLACKNELL (SBN 237162)**
**KELLEN DAVIS (SBN 326672)**
**DEION BENJAMIN (SBN 332578)**
200 Corporate Pointe, Suite 495
Culver City, CA 90230
T.: 310.469.9117; F.: 310.388.3765

Attorneys for Plaintiff,
**SERGIO CRUZ GONZALEZ**

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO CRUZ GONZALEZ,<br><br>                    **Plaintiff,**<br><br>        vs.<br><br>COUNTY OF LOS ANGELES; DEPUTY IBARRA, individually and in his official capacity; DEPUTY ORNELAS, individually and in his official capacity; DOES 1 through 10, inclusive,<br><br>                    **Defendants.** | **COMPLAINT**<br><br>(1)  Violation of Civil Rights (42 U.S.C. §1983) (*5th, 8th and 14th Amendments – Excessive Force*)<br><br>(2)  Violation of Civil Rights (42 U.S.C. §1983) (*4th, 8th, and 14th Amendment – Cruel and Unusual Punishment*)<br><br>(3)  Violation of Civil Rights (42 U.S.C. §1983) ( *4th, 8th, and 14th Amendment - Right to Intervention Against Unlawful Violence*)<br><br>(4)  Violation of Civil Rights (42 U.S.C. §1983) (*4th, 8th, and 14th Amendment – Deliberate Indifference to Serious Medical Needs*)<br><br>(5)  Violation of Civil Rights (*42 U.S.C. §1983) (4th, 8th, and 14th Amendment – Municipality Liability - Unconstitutional Custom, Practice, or Policy*)<br><br>(6)  Violation of Civil Rights (*42 U.S.C. §1983) ( 4th, 8th, and 14th Amendment – Municipality Liability -  Inadequate Training/Policy of Inaction*) |

(7)   Negligence
(8)   Negligence Res Ipsa Loquitur
(9)   Battery
(10)  Intentional Infliction of
      Emotional Distress
(11)  Violation of Title II of
      Americans with Disabilities
      Act/Rehabilitation Act of 1973 §
      504
(12)  Interference with Constitutional
      Rights *(BANE Act: California
      Civil Code §52.1)*

**DEMAND FOR JURY TRIAL**

**Case no.:**

Plaintiff SERGIO CRUZ GONZALEZ alleges on information and belief as follows:

## PARTIES

1.   At all relevant times mentioned in this Complaint, Plaintiff SERGIO CRUZ GONZALEZ

     (hereinafter "Mr. Gonzalez" or "Plaintiff") was a resident of Los Angeles County,

     California.

2.   At all times relevant herein, Plaintiff was an incarcerated inmate in the custody of

     DEFENDANT LOS ANGELES COUNTY at the LOS ANGELES TWIN TOWERS

     CORRECTIONAL FACILITY in Los Angeles, California.

2

3. DEFENDANT LOS ANGELES COUNTY (hereinafter, "COUNTY") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the state of California.

4. COUNTY is responsible for the care and custody of inmates incarcerated in COUNTY jail facilities.

5. DEFENDANT COUNTY is responsible for the funding, staffing, and direction of Los Angeles County Sheriff's Department (hereinafter also "LASD"); for the hiring, retention, training, and supervision of LASD employees; and for the observation of rights of LASD employees and persons subject to LASD jurisdiction.

6. At all times applicable herein, Deputy Ornelas (hereafter "DEFENDANT DEPUTY OENELAS" or "ORNELAS") was an individual residing, on information and belief, in the County of Los Angeles or otherwise within the jurisdiction of the Central District of California.

7. At all times applicable herein, DEPUTY IBARRA (hereafter "DEFENDANT IBARRA" or "IBARRA") was an individual residing, on information and belief, in the County of Los Angeles or otherwise within the jurisdiction of the Central District of California.

8. Hereinafter, all individual Defendants, including these presently named as DOE defendants, shall be collectively referred to as "LASD DEFENDANTS."

9. PLAINTIFF is ignorant of the true names and capacities of those DEFENDANTS sued herein as DOES 1 through 100, inclusive, and therefore sues them by such fictitious names. PLAINTIFFS will amend this complaint to show the true names and capabilities of said DOE DEFENDANTS when the same are ascertained. PLAINTIFF is informed and believes and thereon alleges, that each of the fictitiously named defendants was in some manner

liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

10. PLAINTIFF is informed and believes, and based upon such information and belief, alleges that each of the above-named parties was an agent, employee, principal, or employer of each of the remaining defendants and vice/versa. In addition, PLAINTIFF is informed and believes and, on such basis, alleges that the defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

## JURISDICTION

11. PLAINTIFF SERGIO CRUZ GONZALEZ brings the instant action pursuant to 42 U.S.C. §1983 to redress conduct by DEFENDANTS, who, at all times relevant herein, acted under color of law, and through said conduct deprived PLAINTIFF of his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as under federal and state law.

12. This court has subject matter jurisdiction over the instant action pursuant 28 U.S.C. §1343(a)(3) and (a)(4) because PLAINTIFF's claims present questions arising under the laws, treatises, and Constitution of the United States, such that these questions can only be decided by a competent federal court.

13. This court has supplemental jurisdiction pursuant to 28 U.S.C section 1367 over those claims that do not arise under the laws, treaties, and Constitution of the United States because those claims arise from the same occurrence that gave rise to the governing federal questions.

14. This court has personal jurisdiction over all DEFENDANTS because COUNTY is a public entity existing and operating solely in the Central District of California, and the remaining DEFENDANTS are agents or employees of COUNTY.

15. This court has personal jurisdiction over LASD DEFENDANTS, and each of them, because, on information and belief, LASD DEFENDANTS are each domiciled in the Central District of California.

16. PLAINTIFF has exhausted all administrative remedies available to him as a prisoner in the custody of LASD pursuant to *42 U.S.C.A. §1997e.*

17. On January 7, 2022, PLAINTIFFS filed a notice of government claim with the County of Los Angeles pursuant to the California Tort Claims Act. *Cal. Gov. Code section 910-945.6.*

18. On February 21, 2022, PLAINTIFFS government claim was rejected by operation of law as a result of DEFENDANT COUNTY's failure to respond to the claim within 45 days of its receipt.

## **VENUE**

19. Venue is proper as to COUNTY because the court is located within Los Angeles County, COUNTY'S jurisdiction aligns with that of the court, and all of COUNTY'S activities take place in Los Angeles County.

20. Venue is proper as to all individual DEFENDANTS because, on information and belief, all individual DEFENDANTS reside in the Los Angeles County. The individual DEFENDANTS were the knowing agents or representatives of COUNTY; the events at issue occurred in Los Angeles County; and PLAINTIFF is a resident of Los Angeles County.

21. PLAINTIFF alleges on information and belief that DOES 1 through 10, inclusive, are also residents of the Central District of California and that the court has jurisdiction over those defendants, rendering venue proper as to those parties as well.

22. The Central District of California is also the proper venue for this action pursuant to 28 U.S.C. §1391 because all acts giving rise to this action occurred in the Central District of California.

## COMMON ALLEGATIONS

23. PLAINTIFF was arrested and taken into the custody of DEFENDANT COUNTY on or about March 28, 2021.

24. PLAINTIFF is a 31-year-old male who is paralyzed from the waist down due to suffering a T10 and T11 spinal cord injury at the age of 15. PLAINTIFF has been confined to a wheelchair since the age of 15. DEFENDANT has actual knowledge of PLAINTIFFS medical condition.

25. Due to PLAINTIFFS medical injuries, PLAINTIFF was housed at Twin Towers.

26. On July 12th, 2021, PLAINTIFF remained in the custody of DEFENDANT COUNTY at LOS ANGELES TWIN TOWERS CORRECTIONAL FACILITY, (hereinafter, as "Twin Towers") in Los Angeles, California.

27. Twin Towers houses inmates who suffer from various medical and mental health needs.

28. Agents, employees, and/or representatives of DEFENDANT COUNTY exercise exclusive dominion and control over Los Angeles County jail facilities, including Twin Towers.

29. Agents, employees, and/or representatives of DEFENDANT COUNTY, exclusively, control access to each area, part, module, section, cell, room, office, pod, and/or tier in Twin Towers Jail.

30. On information and belief, grievances have been filed and other complaints have been made regarding multiple incidents of physical assaults by DEFENDANTS against inmates in Men's Central Jail and Twin Towers. Cameras are stationed in dayrooms and thought-out the jails that provides a live feed as well as saved footage of the physical assault. There is no dispute whatsoever that DEFENDANTS knew physical assaults and fights occurred and knew that Deputies were allowing and facilitating these assaults. No action has been taken by COUNTY to remedy this known practice despite express knowledge of the individuals involved and the nature of the violations.

31. On or about July 4, 2018, DEFENDANTS escorted inmates to the dayroom on module 4600B where approximately 15 other inmates were already present and engaging in rounds of hand-to-hand combat. At least one deputy escorted inmates to the dayroom while others looked on, observed the fighting, and left while the combat continued. At least 10 fights took place that day while deputies watched. No reports were generated, and no one was taken for medical treatment despite the fact that the fights included stabbings. On information and belief, at least one inmate was stabbed between 5 and 10 times during the incident.

32. On or about September 15, 2018, on module 4600B at Men's Central Jail in Los Angeles, no less than three deputies beat an inmate in the face and body for refusing to participate in fights in the custom of fights in dayroom. The inmate was not resisting or threatening any officer. While he stood surrounding by deputies, talking, deputy punched him in the face which then brought the inmate to the ground where another deputy punched and kicked him so many more times and also choked him along with at least two other deputies.

33. On or about August 1, 2020, on module 2200B at Men's Central Jail in Los Angeles, at between 6:00 and 7:00 a.m., a defendant was attacked in his cell by no less than five inmates who were allowed to enter that inmate's private cell for the purpose of assaulting him. The inmate attempted to report this incident. In response, deputies placed him on a "High Power" module where inmates live in isolation and receive significantly curtailed privileges.

34. On or about February 25, 2022, on module 4700 at Men's Central Jail in Los Angeles, at between 12:00 and 3:00 p.m., a defendant was stabbed by another inmate at least 12 times. Deputies failed to intervene and watched the assault until the inmate decided to stop stabbing the defendant. Deputies in the module are aware that defendant had a verbal altercation with the inmate a few days prior to the attack.

35. Based on information and belief PLAINTIFF has had multiple arguments and disagreements with deputy Ibarra prior to July 12th, 2021, physical assault.

36. On or about July 12th, 2021, between the hours of approximately 2:00pm and 7:00pm; PLAINTIFF was located and housed in 272 B Pod which was assigned to him by COUNTY representatives.

37. On information and belief, COUNTY representatives that were assigned to work on Plaintiff's pod or that were otherwise present during the events alleged herein include but are not limited to DEFENDANT DEPUTY IBARRA, DEFENDANT DEPUTY ORNELAS, and DOES 1 through 10.

38. PLAINTIFF and a few other inmates were joking around and had begun to wrestle in a playful manner. When Defendant Deputy Ibarra observed the conduct, he immediately advised PLAINTIFF to "roll up" his property because he was going to be taken to the hole.

39. Based on information and believe, PLAINTIFF politely "rolled up" his property and was escorted by Defendant Deputy Ibarra outside of 272 B pod. Once outside of the pod, Defendant Deputy Ibarra placed Mr. Gonzales in handcuffs.

40. Defendant Deputy Ibarra began to ask PLAINTIFF to give him some reasons as to why he should not take him to the hole. Mr. Gonzalez responded to each question by laughing and stated, "just take me to the hole."

41. Enraged by PLAINTIFFS' responses, Defendant Deputy Ibarra immediately uncuffed Mr. Gonzalez and placed him back in B pod.

42. Still enraged at PLAINTIFF responses, Deputy Ibarra immediately walked to A pod to escort another inmate into Mr. Gonzalez's pod.

43. Based on information and belief, the identity and name of the inmate that was ordered and escorted by Deputy Ibarra into the pod is currently unknown. The inmate was assigned to A pod and was not assigned to the same housing pod as Mr. Gonzalez but was transported by Deputy Ibarra across pods for the sole purpose of placing him in Mr. Gonzalez pod to physically assault and discipline Mr. Gonzalez.

44. On information and belief, no documentation exists to commemorate any request, order, or approval for moving the inmate into Mr. Gonzalez pod. Plaintiff alleges that Defendant deputies intentionally forewent producing any such documentation or otherwise destroyed any such documentation.

45. At the time that the inmate was ordered into Mr. Gonzalez pod, no other inmates were moved or ordered to exit their pod.

46. Defendants' deputies intentionally opened the door(s) for the inmate to exit his pod and escorted the inmate into Mr. Gonzalez's pod with knowledge that he was not housed on that pod and that it was against procedure for him to be there.

47. On information and belief, deputies placed the inmate in Mr. Gonzalez's pod for the express purpose of compelling the inmate to physically discipline and punish Mr. Gonzalez.

48. When the inmate was placed in Mr. Gonzalez's pod, he immediately approached him and stated, "let's go talk in the back of the dorm where phones and bed located." Once they arrived in the back of the pod, the inmate immediately began to physically assault Mr. Gonzalez. He violently punched Mr. Gonzalez in the face and head until he fell out of his wheelchair. After falling to the ground, the inmate continued to punch and kick Mr. Gonzalez. Defendant Deputies watched, laughed, and joked as they observed the physical assault from the control station. Because of his paraplegic condition, PLAINTIFF was completely helpless to defend himself against the physical assault. PLAINTIFF was forced to endure the physical assault for approximately 1-3 min while deputies watched, during which time he sustained serious injuries to his face, head, and torso.

49. After the assault, DEFENDANTS then proceeded to remove the inmate from the pod and transported him back to his assigned pod. While transporting the inmate back to his pod, officers continued to laugh at PLAINTIFF. This movement was again made without documentation reflecting a request, order, or approval for such movement.

50. Once he was able to muster strength to get back in his wheelchair, PLAINTIFF, in excruciating pain, bleeding, and in need of immediate medical attention, began to frantically bang on the control station window to get the officers to stop laughing.

51. Shortly thereafter more deputies were called into the pod. Upon arrival PLAINTIFF embarrassed and humiliated by the physical assault, PLAINTIFF threw a water bottle down at the ground.

52. In response to PLAINTIFF throwing the water bottle at the ground, DEFENDANTS then proceeded to violently punch PLAINTIFF.

53. PLAINTIFF was then placed in a restrain chain and then escorted to the nurse office to have injuries documented for evidence.

54. On information and belief, DEFENDANTS conspired to covertly move the inmate into PLAINTIFFS pod for the sole purpose of facilitating the staged physical assault between he and PLAINTIFF for DEFENDANT deputies' amusement.

55. Despite sustaining significant wounds due to the physical assault in his dorm, Plaintiff received little to no medical care from the nurses. He was forced to heal himself with primitive resources available to him as a prisoner.

56. After visiting the nurse, PLAINTIFF was placed in solitary confinement.

57. While in the hole, PLAINTIFF received a visit from Internal Affairs who took PLAINTIFFS statement and photos of his physical injuries.

58. On information and belief, DEFENDANTS failed to file any paperwork to justify their excessive use of force in efforts to shield culpable individuals from liability.

59. Cameras are stationed in Twin Towers that provide a live feed as well as a saved footage of the physical assault. There is no dispute whatsoever that DEFENDANTS knew the attack occurred and knew that DEFENDANTS allowed this attack to occur. No action has been taken by LASD to remedy these common incidents despite express knowledge of the individuals involved and the nature of the violations.

60. On information and belief, PLAINTIFF is informed and believes that this assault is a result of direct retaliation for disagreements that PLAINTIFF had with DEPUTY IBARRA in the past.

## FIRST CLAIM – VIOLATION OF 42 U.S.C. § 1983 et. seq.: FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT (EXCESSIVE FORCE)

### By Plaintiff SERGIO CRUZ GONZALEZ

### Against COUNTY OF LOS ANGELES, LASD DEFENDANT and DOES 1-10

61. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 60, above.

62. At all times relevant herein, COUNTY and its agents, employees, or representatives including LASD DEFENDANTS acted under color of law.

63. At all times relevant herein, PLAINTIFF had, and has, a right, secured by the Fifth and Eighth Amendments to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to be free from cruel and unusual punishment involving the wanton infliction of pain that is unrelated to any legitimate penological objective and administered without due process of law.

64. By forcing an inmate housed on another pod to enter PLAINTIFF's assigned pod on a different unit or module for the sole purpose to physically assault and discipline PLAINTIFF, DEFENDANTS representatives acted intentionally with a purpose to harm PLAINTIFF and endangered his life, and did in fact endanger his life, with deliberate indifference and willful disregard for his civil rights under the Constitution and laws of the United States and the State of California.

65. LASD DEFENDANTS acted deliberately and with knowledge that it was against the law to order another inmate to physically assault another inmate and abused their positions as officers of the law to not only order but force the inmates to physically assault other inmates against their will.

66. DEFENDANTS acted under color of law and abused their authority as law enforcement not only to facilitate the physical assault to discipline PLAINTIFF, but to watch the entire fight from the control center for amusement.

67. DEFENDANTS' actions against PLAINTIFFS were done in part to punish PLAINTIFF for failing to answer deputy Ibarra's questions correctly, which amounted to punishment without due process of law.

68. DEFENDANTS' actions as described herein were not, and cannot be, related to any legitimate penological objective.

69. At all times relevant herein, PLAINTIFF was subject to the complete dominion and control of COUNTY and its representatives. PLAINTIFF had no agency with respect to his involvement in the aforementioned events but was forced to engage in combat against his will by COUNTY representatives.

70. DEFENDANTS knowingly and intentionally employed, or used as agents of their unlawful objectives, another inmate which was also subject to complete dominion and control of DEFENDANTS while incarcerated at Los Angeles County Twin Towers Jail to execute the unlawful violent force against PLAINTIFF.

71. DEFENDANTS acted intentionally and deliberately when each of them conspired, planned, and deliberately caused another inmate to be placed in PLAINTIFF's assigned pod and

thereby result in PLAINTIFF being helplessly beaten while DEFENDANTS watched, cheered, and laughed.

72. The conduct of DEFENDANTS was so brazen, and all DEFENDANTS were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT LOS ANGELES COUNTY, under which COUNTY representatives apply unlawful violence against inmates, or cause unlawful violence to be applied against inmates through means including but not limited to the forced assaults, for reasons unrelated to any legitimate penological objective, and other representatives with knowledge of the schemes to perpetrate violence adhere to silence and refuse to intervene or report the unlawful activity. Officers, support staff, supervisors, and legislating authorities within COUNTY know of specific instances of this conduct and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration and consequences of this custom.

73. DEFENDANTS representatives acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. In addition, Twin Towers Jail is equipped with hundreds of cameras that necessarily recorded the incident. DEFENDANTS' actions in spite of the certainty that their conduct would be documented on camera reflects the actors' knowledge of the custom or policy and their belief that superiors or other officials would allow, affirm, or not punish them for such conduct.

74. Plaintiff further alleges on information and belief that the entire chain of command in the Sheriff's Department, up to and including the Los Angeles County Sheriff and the Los Angeles Board of Supervisors, are aware of this practice or custom and knowingly approve

of, facilitate of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

75. On information and belief, the forced combat to which PLAINTIFF was subjected is a routine component of the custom within the COUNTY, specifically in the Sheriff's Department, under which countless other inmates have been, and continue to be, compelled to participate in the same type of forced combat and subjected to similar threats, intimidation, and abuse to which PLAINTIFF was subjected in violation of his civil rights.

76. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFF was subjected to extreme violence, and sustained severe physical, mental, and emotional damages.

77. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial.

## SECOND CLAIM – VIOLATION OF 42 U.S.C. § 1983 et. seq.: FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT (CRUEL AND UNUSUAL PUNISHMENT)

### By Plaintiff SERGIO CRUZ GONZALEZ

### Against COUNTY OF LOS ANGELES, LASD DEFENDANTS and DOES 1-50

78. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 77, above.

79. At all times, PLAINTIFF was incarcerated at Twin Towers, a jail operated by the LASD.

80. At all times PLAINTIFF was under the direct supervision and subject to the complete control of their jailers, and correctional officers of the LASD.

81. At all times relevant herein PLAINTIFF had, and has, a right, secured by the Fifth, Eighth Amendments to the United States Constitution, made applicable to the states through the

Fourteenth Amendment, to be free from cruel and unusual punishment involving the wanton infliction of pain that is unrelated to any legitimate penological objective and administered without due process of law.

82. DEFENDNANTS acted under the color of law and abused their authority as deputy Ibarra escorted an inmate housed in another pod to enter PLAINTIFFS assigned pod on a different unit or module for the express purpose of physically assaulting PLAINTIFF and causing PLAINTIFF to be helplessly beaten. DEFENDANTS representatives acted intentionally with a purpose to harm PLAINTIFF and endanger his life, and did in fact endanger his life with deliberate indifference and willful disregard for his civil rights under the Constitution and laws of the United States and the State of California. PLAINTIFF is informed and believes that this brazen conduct was part of an unlawful custom within LASD that occasioned and facilitated the conditions where DEFENDANT IBARRA and DOE DEFENDANTS believed they could take such unlawful action against PLAINTIFF without repercussions.

83. By escorting the inmate to PLAINTIFF pod based on no legitimate penological objective and allowing the inmate to intentionally and maliciously physically kick and punch PLAINTIFF in the face, rib, back and head while PLAINTIFF was seated in his wheelchair and while he was laying helpless on the ground was harmful, unwanted, and excessive.

84. DEFENDANTS orchestrating the physical assault and watching it from the control area for personal amusement was unreasonable, unjustified, and offensive to human dignity. It was also with deliberate indifference to the rights and safety of PLAINTIFF.

85. The conduct of DEFENDANTS was willful, wanton, malicious, sadistic, and done with reckless disregard for the rights and safety of PLAINTIFF. The conduct of DEFENDANTS

was so brazen, and all DEFENDANTS were so familiar and comfortable with the actions that, on information and belief the wrongful acts were undertaken pursuant to an established custom of DEFEDANT LASD, under which LASD representatives apply unlawful violence against inmates, and/or fail to intervene during the application of such violence for reasons unrelated to any legitimate penological objective and other representatives with knowledge of the schemes to perpetuate violence, refuse to intervene, or report the unlawful activity. Officers, support staff, supervisors, and legislating authorities with LASD know of specific instances of this conduct and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration or consequences of this custom.

86. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF sustained damages in an amount subject to proof at trial.

87. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

## THIRD CLAIM – VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 et. seq.: FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT (RIGHT TO INTERVENTION FROM UNLAWFUL VIOLENCE)

### By Plaintiff SERGIO CRUZ GONZALEZ

### Against COUNTY OF LOS ANGELES AND LASD DEFENDANTS

88. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 87, above.

89. At all times relevant herein, PLAINTIFF had, and has, a right, secured by the Fourth and Eighth Amendments to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to intervention from law enforcement where officers are aware of and have the opportunity to intervene and prevent the application of unlawful violence and violation of Plaintiff's constitutional rights. *Cunningham v. Gates, 299 F.3d 1271, 1289-1290 (9th. Cir. 2000).*

90. DOE DEFENDANTS 1 through 10 were present in B pod, when the inmate brutally punched PLAINTIFF in the face and head until he fell out of his wheelchair and continued to punch and kick him while he was helplessly beaten on the ground, and although they knew the inmates conduct was unlawful and amounted to excessive force, DEFENDANTS nonetheless failed to intervene in the application of said violence against PLAINTIFF.

91. At all times relevant herein on information and belief, DOE DEFENDANTS had actual knowledge that unlawful violence was occurring and had the means and opportunity to intervene and prevent or stop the unlawful violence against PLAINTIFF but made the conscious decision to stand by in amusement and allow the inmate to continue to wantonly subject PLAINTIFF to unlawful violence and suffering.

92. DEFENDANTS knew that the inmate had injured PLAINTIFF by brutally punching PLAINTIFF in his head and face until he fell out of his wheelchair. They also knew that the inmate continued to punch and kick him in the face, torso, and head while PLAINTIFF laid helpless on the ground.

93. The conduct of DEFENDANTS was so brazen, and all DEFENDANTS were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT LOS ANGELES

COUNTY, under which COUNTY representatives apply unlawful violence against inmates, cause unlawful violence against inmates, and/or fail to intervene during the application of such violence for reasons unrelated to any legitimate penological objective and other representatives with knowledge of the schemes to perpetrate violence refuse to intervene or report the unlawful activity. Officers, support staff, supervisors, and legislating authorities within COUNTY know of specific instances of this conduct and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration or consequences of this custom.

94.  COUNTY representatives acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. Plaintiff further alleges on information and belief that the entire chain of command in the Sheriff's Department, up to an including the Los Angeles County Sheriff and the Los Angeles County Board of Supervisors, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

95.  On information and belief, the forced combat to which PLAINTIFF was subjected is a routine component of the custom within the COUNTY, specifically in the Sheriff's Department, under which countless other inmates have been, and continue to be, compelled to participate in the same type of forced combat and subjected to similar threats, intimidation, and abuse to which PLAINTIFF was subjected in violation of his civil rights.

96.  Plaintiff is informed and believes that LASD DEFENDANTS and DOES 1 through 10 acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the

individual defendants, and not any public entity, for the purpose of punishing DOES 1 through 10 to deter them and others from such conduct in the future.

97. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

## FOURTH CLAIM – VIOLATION OF 42 U.S.C § 1983 et. Seq.: FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT (DELIBERATE INDIFFERENCE)

### By Plaintiff SERGIO CRUZ GONZALEZ

### Against COUNTY OF LOS ANGELES AND LASD DEFENDANTS

98. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 97, above.

99. By escorting the inmate to PLAINTIFF's pod for the express purpose of physically assaulting PLAINTIFF, despite having knowledge that PLAINTIFF is paralyzed and wheelchair bound and by delaying to procure immediate medical attention for PLAINTIFF despite seeing PLAINTIFF in excruciating pain, bleeding, and being in need of medical attention. In addition, despite the fact that DEFENDANT had the means and opportunity to summons medical care and thus abate the harm, DEFENDANTS displayed a clear, unequivocal and deliberate indifference to PLAINTIFFS serious medical needs and condition. When DEFENDANTS orchestrated the physical assault on PLAINTIFF, DEFENDANTS had actual knowledge that PLAINTIFF was paralyzed, as evidence of the fact that PLAINTIFF is confined to a wheelchair and housed at Twin Towers. DEFENDANTS also confirmed their actual knowledge of PLAINTIFFS condition when they laughed at PLAINTIFF while, he was being physically assaulted.

100. As a LASD agent employed as a deputy officer, DEFENDANTS knew or should have known that they were creating a substantial risk of serious harm to PLAINTIFF by being deliberately indifferent to PLAINTIFF being paraplegic and having visible physical injuries. DEFENDANT IBARRA knew, or should have known, that he was creating a substantial risk of, at minimum, seriously exacerbating PLAINTIFFS already severe injuries.

101. On information and belief, the conduct of DEFENDANTS as described herein is a part of and results from an unlawful custom within LASD under which officers intentionally disregard or a deliberately indifferent to the serious medical needs or conditions of inmates in LASD custody, especially when such injuries are caused by the application of excessive and gratuitous force by other LASD officers. Officers, support staff, supervisors, and legislating authorities within LASD know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration and consequences of this custom. PLAINTIFF further alleges on information and belief that the entire chain of command in LASD, up to and including the LASD Secretary, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

102. DEFENDANTS LASD, DEPUTY IBARRA, AND DOES 1 through 10, which included LASD custodial and medical staff, were on notice that LASD's deficient policies procedures and unlawful practices as alleged herein created a substantial risk of serious harm, including broken bones and other severe physical and mental injuries, to PLAINTIFF and other similarly situated inmates because they are subject to the complete dominion and control of LASD and thus at risk of harm when LASD and its agents uphold a custom in

which they use excessive force and subject inmates to cruel and unusual punishment and then deliberately disregard the medical condition or needs created by this custom even when LASD agents including supervisors gain actual knowledge of said need for medical attention.

103. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial.

104. PLAINTIFF is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppressing and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

### FIFTH CLAIM – VIOLATION OF 42 U.S.C § 1983 et. Seq.: MUNCIPAL LIABILITY (UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY)

#### By Plaintiff SERGIO CRUZ GONZALEZ

#### Against LASD

105. PLAINTIFF reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 104, above.

106. The individual DEFENDANTS and DOE DEFENDANTS acted under color of law and within the course and scope of their employment by the LASD.

107. The individual DEFENDANTS and DOE DEFENDANTS deprived PLAINTIFF of his rights under the Fourth, Eighth, and Fourteenth Amendments, as alleged above.

108. Based on information and belief, PLAINTIFF thereon alleges that, at all times herein mentioned, DEFENDANTS LASD, the relevant policy maker, and unnamed certain DOES

(hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of PLAINTIFF Fourth, Eighth, and Fourteenth Amendment, as alleged above.

109. The policies, customs, and practices described above are also evidenced by the victimization of other inmates on multiple occasions at Men's Central Jail and Twin Towers by DEFENDANTS non-compliance with Adult Title 15 standards, including the failure of LASD to investigate multiple grievances filed by other inmates in regard to multiple incidents of physical assaults orchestrated or committed by LASD staff.

110. Entity DEFENDANTS had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Indeed, entity DEFENDANTS knew of their obligations under Adult Title 15 and still failed to investigate the multiple incidents of physical assault reported by other inmates. Said officials acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, and customs with respect to the constitutional rights of PLAINTIFF.

111. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned DEFENDANTS, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

**SIXTH CLAIM – VIOLATION OF 42 U.S.C § 1983 et. seq.: MUNICIPAL**

**LIABILTY (INADEQUATE TRAINING/POLICY OF INACTION)**

**By Plaintiff SERGIO CRUZ GONZALEZ**

**Against LASD**

112. PLAINTIFF reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 111, above.

113. At all times mentioned herein and prior thereto, DEFENDANTS LASD, and certain DOES (herein referred to collectively as the entity DEFENDANTS) had a duty to train, instruct, supervise, discipline and/or correct their subordinates to assure they respected and did not violate constitutional and statutory rights including, but not limited to, the right to be free from physical abuse, the right to be safe and protected from injury while in defendant's custody under the Fourth, Eight, and Fourteenth Amendments to the U.S. Constitution.

114. Based on information and belief, PLAINTIFF thereupon alleges, that the prior incident alleged herein, DEFENDANTS and certain DOES facilitated, permitted, ratified and/or condoned acts of physical assault of PLAINTIFF by DEFENDANTS, and were deliberately indifferent to the health and safety of inmates in general and PLAINTIFF in particular. Said DEFENDANTS knew, or should have reasonably known, of this practice, pattern, or custom of constitutional violations by the DEFENDANTS they supervised, and additionally of the existence of certain facts and situations that created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to PLAINTIFF, but failed to do so.

115. The training provided by the LASD, relevant policy makers, relevant LASD officials, and certain DOES was not adequate to train their correctional officers, nurses, and other jail staff

to handle the usual and recurring situations with which they must deal. As evidenced by the numerous incidents of physical assaults reported by inmates in LASD custody by DEFENDANT staff, the entity DEFENDANTS did not adequately train their officers and staff to prevent, deter, detect, and avoid physical assault of PLAINTIFF at the Twin Towers – and were on notice of such.

116. The entity DEFENDANTS maintained a policy and practice of inaction with respect to the violation of policies designed to prevent or deter physical assaults of PLAINTIFF. LASD deputy officers and staff who engaged in suspicious behavior, or behavior that violated written policy, were inadequately disciplined, or otherwise not penalized in connection with physical or otherwise inappropriate behavior towards PLAINTIFF. The entity DEFENDANTS were deliberately indifferent to the obvious consequences of their failure to train their officers and staff adequately. Entity DEFENDANTS' non-compliance with Adult Title 15 standards is further evidence of entity defendants' systematic failure to comply with their constitutional obligations.

117. As a result, thereof, PLAINTIFF'S right under the Fourth, Eight, and Fourteenth Amendments to the U.S Constitution were violated. As a further result thereof, PLAINTIFF sustained the injuries and damages alleged herein.

118. The individual DEFENDANTS and DOE Defendants acted under color of law and within the course and scope of their employment by the LASD.

119. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and practice of inaction of the aforementioned defendants, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

120. The conduct of the individual defendants mentioned herein, in their individual capacities, was intentional, malicious, willful, wanton and in reckless disregard of PLAINTIFF'S conditional rights, and/or grossly negligent as this conduct shocks the conscience and is fundamentally offensive to a civilized society.

121. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned DEFENDANTS, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

**SEVENTH CLAIM FOR RELIEF – NEGLIGENCE**

**By Plaintiff SERGIO CRUZ GONZALEZ**

**Against LASD DEFENDANTS**

122. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 121, above.

123. When COUNTY took custody of PLAINTIFF, it caused a special relationship requiring DEFENDANTS to warn and protect PLAINTIFF from all known and foreseeable harm. *Girardo v. California Dept. of Corrections and Rehabilitation, 168 Cal. App. 4th 231, 251 (2008)*.

124. DEFENDANTS knew that violence is frequent between inmates in Men's Central Jail and Twin Towers, and that inmates require ongoing supervision in order for DEFENDANTS to prevent such violence.

125. DEFENDANTS knew that the risk that Plaintiff who is paraplegic would sustain harm upon DEFENDANTS placing another inmate who was assigned to another housing module in PLAINTIFF's pod was almost certain and thus was certainly foreseeable.

126. On information and belief, DEFENDANTS knew that violence would occur when the inmate was ordered to enter Mr. Gonzalez's pod.

127. DEFENDANTS were required to establish and observe protocol and procedures sufficient to prevent an inmate from leaving his assigned pod and/or module without proper authorization.

128. DEFENDANTS were required to establish and observed protocol and procedures sufficient to prevent an inmate from entering a module, tier, unit, cell, or pod to which he is not formally assigned for housing.

129. DEFENDANTS were required to establish and observe protocol and procedures sufficient to prevent COUNTY representatives from forcing inmates to physically assault and discipline other inmates.

130. DEFENDANTS breached its duty of care when DEFENDANTS ordered one inmate to enter another module or unit and ultimately Plaintiff's pod without proper authorization.

131. DEFENDANTS breached its duty of care when DEFENDANTS forced PLAINTIFF to be helplessly beaten by another inmate that was unlawfully placed in his pod.

132. By engaging in the aforementioned conduct, DEFENDANTS acted with deliberate indifference to the foreseeable risk that Plaintiff could suffer grievous injury up to, and including, death, as a result of being forced to participate in such combat.

133. DEFENDANTS' actions were the proximate cause of PLAINTIFF'S injuries because the harms and damages suffered by PLAINTIFF were the foreseeable result of the aforementioned conduct of DEFENDANTS.

134. DEFENDANTS' conduct is the actual cause of PLAINTIFF's injuries because Mr. Gonzalez would not have suffered the harms and damages sustained in this matter but for DEFENDANTS' negligence.

135. As a result of DEFENDANTS' conduct, PLAINTIFF has suffered damages including but not limited to abrasions; contusions; anxiety; stress; fear for his health; and well-being; and the physical manifestations of the stress and anxiety produced by the aforementioned conduct by DEFENDANTS.

136. Plaintiff is informed and believes that DEFENDANTS and DOES 1 through 10, inclusive, acted knowingly and willfully, with malice and oppression and with the intent to harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages against the individual defendants, not any public entity, in order to punish those defendants and to deter them and others from such conduct in the future.

## EIGHTH CLAIM – NEGLIGENCE RES IPSE LOQUITUR

### By Plaintiff SERGIO CRUZ GONZALEZ

### Against LASD DEFENDANTS

137. PLAINTIFF reincorporates, and realleges as if set forth fully herein, paragraphs 1 though 136, above.

138. DEFENDANTS had a special duty exercise the care of reasonable law enforcement officers responsible for housing inmates entrusted to County custody.

139. Inmates, including Plaintiff Sergio Cruz Gonzalez, do not have control over the devices, control booths, panels that command doors to open in Twin Towers Jail.

140. DOE inmate was not assigned to Plaintiff's module or unit, and certainly was not assigned to be housed in Plaintiff's pod.

141. Because PLAINTIFF had no control to access door commands; only defendants had control of the facility; and only DEFENDANTS know how the inmate was physically taken to another module or unit in the jail. the conduct of DEFENDANTS is presumed to be negligent because there is no condition under which any inmate could enter a module and cell to which he is not assigned in the absence of DEFENDANTS' breach of their duty of care

    a.  Plaintiff was in exclusive care and control of DEFENDANTS.

    b.  The inmate was also an inmate, and thus also in the exclusive care and custody of DEFENDANTS.

    c.  Only DEFENDANTS had control of the commands to allow PLAINTIFF to physically enter another pod.

142. DEFENDANTS' negligence directly and proximately caused PLAINTIFF to suffer damages including but not limited to physical wounds, mental shock, anguish, fear, anxiety, and emotional distress.

143. PLAINTIFF would not have suffered the aforementioned harms but for DEFENDANTS's conduct.

144. As a result of DEFENDANTS' breach of its duty of care, PLAINTIFF is entitled to recover damages for his injuries in an amount according to proof.

### NINTH CLAIM FOR RELIEF – BATTERY

**By Plaintiff SERGIO CRUZ GONZALEZ**

**Against LASD DEFEDANTS**

145. PLAINTIFF reincorporates, and realleged as if set forth fully herein, paragraphs 1 through 144, above.

146. By ordering another inmate to enter Mr. Gonzalez's pod to which he was not assigned, on a module or unit to which that inmate was not assigned, DEFENDANTS acted in a manner that was substantially certain to, and did, result in harmful and offensive touching against PLAINTIFF.

147. During the actual violent physical assault, DEFENDANTS knew that violence was taking place and purposely did not intervene.

148. The intentional conduct of DEFENDANTS caused Plaintiff to suffer physical, mental, and emotional harm subject to proof.

## <u>TENTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

### By Plaintiff SERGIO CRUZ GONZALEZ

### <u>Against LASD DEFENDANTS</u>

149. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 148, above.

150. During the times relevant herein, DEFENDANTS, and each of them, engaged in extreme, outrageous, unlawful, and unprivileged conduct, including, but not limited to:

    a. Extracting an inmate from another pod and ordering him, to go inside of PLAINTIFFS's pod;

    b. Coercing and forcing PLAINTIFF who is paraplegic to be helplessly beaten by a non-paraplegic inmate;

    c. Watching from the control booth as PLAINTIFF was helplessly beaten, and intentionally failing to intervene even when PLAINTIFF was obviously seriously injured;

d.  Laughing, joking, and using the combat as entertainment.

e.  Colluding to suppress evidence of the aforementioned conduct.

151. DEFENDANTS and DOES 1 through 10 engaged in all conduct described in this complaint with express and implied knowledge that PLAINTIFF was particularly susceptible to emotional distress because he was incarcerated and subject to the complete control of DEFENDANTS.

152. DEFENDANTS and DOES 1 through 10, inclusive, participated in, conspired with, approved of and/or aided and abetted the conduct of remaining DEFENDANTS.

153. On information and belief, DEFENDANTS, and each of them, intended to cause harm to PLAINTIFF, or acted with a reckless disregard for the likelihood that he would suffer extreme emotional distress as a result of the conduct listed above.

154. As the direct and proximate result of the extreme and outrageous conduct of DEFENDANTS, and DOES 1 through 10, inclusive, PLAINTIFF suffered extreme emotional and physical distress, including, but not limited to humiliation, depression, anxiety, mortification, terror, shock, worry, and indignity to an extent and in an amount subject to proof at trial.

## ELEVENTH CLAIM FOR RELIEF - Violations of TITLE II of the Americans with Disabilities Act, and Rehabilitation Act of 1973 § 504

### By Plaintiff RODNEY HILL

### Against CDCR

155. PLAINTIFF hereby repeats, re-alleges, and incorporates by reference herein each and every allegation contained in paragraphs 1-154 above, as if fully set forth herein.

156. The conduct of DEFENDANTS, as alleged herein, violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.,* and the federal regulations promulgated pursuant thereto.

157. At all times relevant to this action, the ADA, 42 U.S.C. § 12101 *et seq.,* was in full force and effect in the United States.

158. Sergio Cruz Gonzalez was a qualified individual with a disability, as that term is defined in Section 504 of the Rehabilitation Act, 29 U.S.C. § 705 (20), and the ADA.

159. The ADA, 42 U.S.C. § 12132, Prohibits public entities from discriminating against a qualified individual with a disability in the provision of services, programs, or activities. Section 504 of the Rehabilitation Act, 29 U.S.C § 794 prohibits any program or activity from receiving federal financial assistance from denying a qualified individual with a disability the benefits of the program or activity or discriminating against the qualified individual with a disability because of the disability.

160. DEFENDANTS LASD receives financial assistance as that term is used in 29 U.S.C. § 794.

161. PLAINTIFF was discriminated against in the provision of appropriate institutional placement and medical and/or mental health services because of his paraplegic medical condition, in that he was delayed and not immediately provided appropriate medical services after he was physically assaulted and helpless

162. The aforementioned acts and/or omissions by DEFENDANTS, and DOES 1 through 10, as alleged herein, were malicious, reckless and/or accomplished with a wanton or conscious disregard of PLAINTIFF's rights.

## TWELETH CLAIM – VIOLATION CIVIL CODE SECTION 52.1 (B)

## INTERFERENCE WITH CONSTITUTION RIGHTS

### By Plaintiff RODNEY HILL

### Against DEFENDANT LUNA, DEFENDNAT MIMS, and DOES 1 through 50

163. PLAINTIFF hereby repeats, re-alleges, and incorporates the allegations continued in paragraphs 1-162, above, as if fully set forth herein.

164. The Plaintiff has, and at all times referenced in this Complaint has had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against the application of cruel and unusual punishment.

165. Plaintiff has also had a right to be safe and secure in the unmolested integrity of his body.

166. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with Plaintiff's aforementioned constitutional rights through the conduct described herein.

167. DEFENDANTS have engaged in a pattern of conduct that is reflective of a policy or procedure amongst DEFENDANTS to engage in conduct such as that described herein, and to evade detection and reprimand for such conduct, and to promulgate a culture in Los Angeles County jails where inmates' constitutional rights are violated with deliberate indifference and impunity.

168. As a result of the above-described, Plaintiff has suffered, and continues to suffer, great pain or mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from obtaining the full enjoyment of life: and

1    will incur medical expenses for physical injuries and, additionally, for psychological

2    treatment, therapy, and counseling.

3  169. As a direct and proximate result of the aforementioned acts of defendants, PLAINTIFF was

4

5    injured as set forth above, and is entitled to statutory damages under California Civil Code

6    §52, as well as compensatory and punitive damages according to proof.

7                                              **PRAYER**

8

9       WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action

10   as follows:

11         1.   Plaintiff demands a jury trial as to the issues triable;

12         2.   General damages and special damages according to proof;

13         3.   Punitive damages against the individual defendants, and not any public entity;

14

15         4.   Attorney's fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

16         5.   Injunctive relief, both preliminary and permanent, as allowed by law;

17         6.   Costs of suit incurred herein; and

18         7.   Such further relief as the Court deems just and proper.

19

20       Dated: August 18, 2022,                    Respectfully submitted,

21

22                                                  LAW OFFICE OF J. BLACKNELL

23

24

25   By: _____

26   JOVAN BLACKNELL
     KELLEN DAVIS
27   DEION BENJAMIN
     Attorney for Plaintiff
28   SERGIO CRUZ GONZALEZ